IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE |
| v. | : | |
| | : | No. 4:18-CR-274 (LGW)(BWC) |
| PABLO RANGEL-RUBIO | : | |
| JUAN RANGEL-RUBIO | : | |
| HIGINIO PEREZ-BRAVO | : | |
| _____ | : | |

JOINT MOTION TO DISMISS COUNTS SIX, SEVEN, AND EIGHT

Comes now, Pablo Rangel-Rubio, Juan Rangel-Rubio, and Higinio Perez-Bravo, Defendants in the above-styled action, by and through undersigned counsel and move this Court to dismiss counts six, seven, and eight of the indictment. This Court has the authority, as detailed more fully below, to grant the Defendants' request, and because the government cannot satisfy the elements of each count, as a matter of law, counts six, seven, and eight should be dismissed.

**I.    This Court has the authority to grant a motion to dismiss.**

The common law authorized a motion to dismiss, although it was recognized by different names, and that tradition has carried forward. Many courts from district courts to circuit courts to the Supreme Court have granted motions to dismiss, have stated their preference for motions to dismiss, and have not reversed grants of a motion to dismiss when given the opportunity. And, in many appeals, the

government has refused to deny the court's authority to grant a motion to dismiss.

### A.     Dismissal: the broad power to grant summary dismissal

While it is often stated that there is no "summary judgment" motion in federal criminal procedure, in effect this is not exactly correct. There is a "summary dismissal." In some cases the un-tenability of the government's theory is sufficiently evident that there is no question of fact for the jury to decide–the Court can clearly make this determination on the record itself and prior to trial, and therefore must do so. Fed R. Crim. P. 12(b).

The Defendants are not just entitled to be acquitted in cases in which charges are improperly brought, they have a right not to be tried at all on such charges. Where the facts as alleged are admitted or undisputed, which they can be for the sake of this argument, and where the facts, if true, would not sustain a conviction, the District Court is not doomed to sit passively by, and suffer the government to drag the court and the defendant through a trial in which it cannot legally prevail. The judge ought to dismiss, rather than waiting for a jury to hear the factual issues and acquit. *United States v. Levin*, 973F.2d 463 (6th Cir.1992); *Kentucky v. Long*, 837 F.2d 727 (6th Cir.1988); *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976); *United States v. Superior Growers Supply*, 982 F.2d 173 (6th Cir. 1992); *United States v. Castor*, 558 F.2d 379 (7th Cir. 1977); *United States v. Sampson*, 371 U.S. 75, 76, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962).

Upon a motion to dismiss such as the instant one, a district court is empowered, indeed bound, to assess whether the facts as alleged in the indictment meet the requirement of Rule 7 that it "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and whether, because of the deficit of facts alleged or because of the import of facts otherwise known, either admitted or not challenged by the government, an essential component of the offense cannot be established, and that "a trial of facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1560-61, 23 L.Ed.2d 94 (1969).

The very limited resources of our judicial system require that challenges to an insufficient indictment be made at the earliest possible moment in order to avoid needless waste. *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S. Ct. 1118 (1977); *United States v. Alfonso*, 143 F.3d 772 at 776-77 (2d Cir.1998); *see also United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981). Allowing the government to proceed and try the Defendants on questionable counts would present the inherent possibility the jury would convict the defendant for the simple reason that they are there. *United States v. Harary*, 457 F.2d 471, 479 (2d Cir. 1972) "Those who have labored in the vineyard of litigation are aware that where the case is a hard one for the government . . ." it will try to achieve its

result by trying to secure "the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty" of some offense "rather than to continue the debate . . . ." *Id.*

In *United States v. Enmons*, 410 U.S. 396 (1973), the Supreme Court affirmed the trial court's dismissal of a Hobbs Act charge brought against union members. The district court noted that the indictment failed to allege that the union members were seeking illegitimate labor goals and that the acts of violence toward the contractor at the time that the workers were engaged in labor activity, though punishable under state law, was not a violation of the Hobbs Act which requires both that the means and objectives of the extortion be "wrongful."

The government took a direct appeal to the Supreme Court, and the Supreme Court affirmed the dismissal. But the point is that it did not rule that the trial court did not have the power to dismiss based on a finding that the facts alleged in the indictment were not sufficient to establish he wrongfulness of the objective of the defendants. While a jury could as well have made the same determination, this did not deprive the court of the power to dismiss the case. Were it otherwise, the Supreme Court would have remanded for the trial court to let a properly instructed jury determine the issue. Instead, it affirmed the dismissal.

Despite other circuit courts and the Supreme Court affirming motions to dismiss, the Eleventh Circuit has held, "[t]here is no summary judgment procedure

in criminal cases. Nor do the rules provide for pretrial determination of sufficiency of the evidence." However, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004). There have been two scholarly treatments of this issue worth noting. Shellow, "Speaking Motions: Recognition of Summary Judgement in Federal Criminal Procedure," 107 F.R.D. 139-201(1985), and Tierney, "Summary Dismissals," 77 U. CHI. L. REV. 1841(2010). Both support the power of the district court to look beyond the face of the indictment in ruling on the legal validity of the theory of criminality contained in a count of the indictment.

### 1. The common law "motion to quash" is incorporated into Rule 12(b).

As stated by the Court in *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998):

> Defendants, of course, were entitled to a ruling on their motion. A Rule 12(b)(2) motion aimed at the sufficiency of the indictment which is capable of determination without the trial of the general issue "shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict.  " Fed.R.Crim.P. 12(e). *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983). "A defense is capable of pretrial determination if trial of the facts surrounding the commission of the alleged offense would  be of  no  assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1560-61, 23 L.Ed.2d 94 (1969). Thus, good cause for deferral exists only if facts at trial will be relevant to the court's decision, but "a district court must rule on any issue entirely segregable from the evidence to be presented at trial." *United States v. Barletta*, 644 F.2d 50, 57- 58 (1st Cir.1981) (emphasis added); *accord, United States v. Jones*, 542 F.2d 661, 664-65

(6th Cir.1976) (district court must dispose of motions raising legal defense prior to trial if it can).

*Id.* at n. 11.

While it is often argued that common-law motions to quash were limited to the "four corners" of the indictment, "[t]he better, and more widely accepted view seems to have been [ ] that the motion could allege defects not apparent upon the record, and that extrinsic evidence could be adduced in support of such allegations." Shellow at 155. As Shellow demonstrates, the adoption of the Federal Rules of Criminal Procedure were not intended or understood to have changed this practice. A full review of his article at this point will obviate the need to summarize further his exposition of the history of the rules. Suffice it to say that "[i]n order to establish any . . . premises [for dismissal], the movant might submit affidavits, call witnesses or adduce any other competent evidence." Shellow at 156. Nor was a court limited in the scope of its review to facts advanced by the defendant; admissions made by the government as to its own case were of equal significance. *See* Joel Prentiss Bishop, *Commentaries on the Law of Criminal Procedure* § 763 (1872) ("[T]he prosecuting attorney may admit the existence of a fact, or the fact may be made to appear on affidavit, and in either case the extrinsic matter will be considered in connection with the indictment as constituting the basis for a motion to quash.")

After the adoption of the Federal Rules of Criminal Procedure in 1946, courts did not consider their authority to dismiss a criminal indictment before trial, upon a

defendant's valid assertion of a complete legal defense, to have been abrogated. Rule 12(b)(2) simply codified the procedure for summary dismissal, without in any way limiting a trial court's ability to grant the same relief according to the same standard: "Under the Federal Rules of Criminal Procedure, defenses and objections which theretofore could have been raised by demurrers and motions to quash are now raised by motions to dismiss." *Universal Milk Bottle Svc., Inc.v. United States*, 188 F.2d 959, 962 (6th Cir. 1951) A mere name change did not diminish the vital necessity of a mechanism for pre-trial dismissal in appropriate cases. As the Sixth Circuit stated in *United States v. Titterington*, the notion that a precedential case or doctrine is merely "a relic of common-law pleading . . . because it spoke of 'demurrers,' 'special pleas' and 'evidence under the general issue' instead of using the up-to-date terminology of the Federal Rules gives too much credit to linguistic trends and too little credit to the stability of the law." *United States v. Titterington*, 374 F.3d 453, 457 (6th Cir. 2004).

Shellow also cites the example of *United States v. Ponto*, 454 F.2d 657 (7th Cir. 1971), *aff'g on rehearing* 454 F.2d 647 (7th Cir., 1971) in which the Seventh Circuit affirmed the trial court's dismissal of a Selective Service case of refusal of induction on the basis of documents showing that the draft board had improperly failed to reconsider his I-A classification. As described by Shellow*:*

> The court held that under Rule 12 of the Federal Rules of Civil Procedure "a defense on the merits can likewise be decided prior to

trial." (*footnote omitted*) Ponto's reclassification argument "involve[d] questions of law for the judge"; therefore, it was properly determined by the court prior to trial on the merits. (footnote omitted) The fact that Ponto's defense relied upon facts outside the record did not alter the propriety of the court's action.

Shellow at 198.

In *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055 (1975) the Supreme Court reviewed a similar case on another issue – whether the government's appeal from a trial dismissal based on a "defense" to the charge was appealable. In that case the trial court relied on facts contained in Serfass' affidavit, in his Selective Service file and in the parties' oral stipulation to the effect that Serfass had stated a prima facie claim for conscientious objector status. Since the matter reached the Supreme Court on another issue, the Court did not have to reach the merits of the district court's action. The Court's opinion in *Serfass*, however, acknowledged the propriety of the district court's action. In footnote 1 the opinion notes without disapproval the district court's determination that Rule 12 permitted him to rule on the defense, and recited cases (including *Ponto*, *supra* and *Covington, infra* and *United States v. Sisson*, 399 U. S. 267, 399 U. S. 301 (1970); *United States v. Knox,* 396 U. S. 77, 396 U. S. 83 (1969); 8 J. Moore, Federal Practice ¶12.04 (1975).

In *United States v. Covington*, 395 U.S. 57, 89 S.Ct. 1559 (1969) in which the district court found that the defendant's privilege against self-incrimination

necessarily would provide a complete defense to the prosecution. The Court noted that the Federal Rules "permit[] factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion."

Shellow cites more cases evincing approval for treatment of motions to dismiss under Rule 12(b) as equivalent to the prior motion to quash and determining them on "extraneous" facts. Shellow, whose article refers to such motions as the "speaking motion" permitted in criminal cases before the Rules, concludes:

> What is important is that the courts have recognized that the Federal Rules of Criminal Procedure incorporated the common law's position on using speaking motions to attack indictments, a recognition which seems not to have received the recognition which it deserves.

Shellow at 200.

In *United States v. Enmons*, 410 U.S. 396 (1973),the Supreme Court affirmed the trial court's dismissal of a Hobbs Act charge brought against union members. The district court noted that the indictment failed to allege that the union members were seeking illegitimate labor goals and that the acts of violence toward the contractor at the time that the workers were engaged in labor activity, though punishable under state law, was not a violation of the Hobbs Act which requires both that the means and objectives or the extortion be "wrongful." The government took a direct appeal to the Supreme Court.

The Supreme Court did not rule that the trial court did not have the power to dismiss based on a finding that the facts alleged in the indictment were not sufficient

9

to establish he wrongfulness of the objective of the defendants. While a jury could as well have made the same determination, this did not deprive the court of the power to dismiss the case. Were it otherwise, the Supreme Court would have remanded for the trial court to let a properly instructed jury determine the issue. Instead it affirmed the dismissal.

### 2.  Cases continue to affirm the expansive power to grant summary dismissal.

More recent cases have affirmed the district court's right to grant a motion to dismiss. In *United States v. Levin*, where "the operative facts, including [extrinsic evidence], were undisputed and a two or three week trial of the substantive criminal charges would not have assisted the district court or [the Court of Appeals] in deciding the legal issues joined by the defendant's pretrial motion to dismiss." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).

The *Levin* court emphasized that the defendants had "conceded that the indictment has stated a criminal offense" against them, and also that they "waived any challenge to the grand jury's conclusion that probable cause existed to return its indictment against them," 973 F.2d at 469; thus the ground for their motion to dismiss was not "that the indictment was based upon insufficient or inadequate evidence," which the Supreme Court has rejected as a ground for dismissal. *Id.* at 468 n.2 (*citing, inter alia, United States v. Calandra*, 414 U.S. 338, 344- 45 (1974)). Nevertheless, the trial court had "correctly concluded from undisputed extrinsic

evidence [. . .] that their Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the requisite intent required to convict [. . .] ." *Id.* at 469 (emphasis in original).

The district court in the Northern District of New York has also given credence to the principal stated in *Levin* that a court must dismiss an indictment when the undisputed extrinsic evidence does not support the charge alleged. In *United States v. Anderson*, No. 00- CR-15(NAM), 2000 WL 362024 (N.D.N.Y. March 30, 2000), the court accepted the propriety of the dismissal of Levin's indictment, where the "defendant could not have had the intent necessary to be convicted of the alleged crimes when the undisputed evidence revealed that at the time they engaged in the complained of conduct, they did so believing it was perfectly legal." *Id.* at 4. The court relied on distinguishing the case from *Levin* because in *Anderson* the defendant actually testified before a Grand Jury that he had mailed a threatening letter, and, accordingly, "[u]nlike *Levin*, in this case there is sufficient evidence of intent to allow this case to proceed as any other." 2000 WL 362024 at *5. In no way did the district court question the general propriety of granting a defendant's motion to dismiss in a case where, upon the facts alleged in the indictment and other, extrinsic evidence, the required criminal intent could not be proven.

11

In *United States v. Said*, 757 F.Supp.2d 554 (E.D.Va. 2010) the district court dismissed a charge of piracy under 18 U.S.C. § 1651. Based on the absence of any allegation that the Somalian defendants had attempted to board the vessel, a US warship,[1] the judge determined that the indictment failed to allege an essential element. The statute defined the crime as "piracy as defined by the law of nations." Based on the last Supreme Court decision in 1820, *United States v. Smith*, 18 U.S. 153 (1820) the court determined that "robbery or forcible depr[e]dation" was an essential aspect of piracy. *Id*. at 559. For a variety of reasons the trial court rejected the government's argument that a differing interpretation of privacy that had evolved under international law, from the time the statute was enacted, could be used, such that piracy would include any unauthorized violent acts toward the ship committed on the high seas without lawful authority.

In *United States v. Autorino*, 307 F.Supp.2d 370 (D. Conn. 2003) the trial court dismissed fraud and false statement charges based on pledges the defendant made to FDIC to secure promissory note given to settle on some defaulted loans as to which FDIC was acting as a receiver. The defendant had pledged a stock certificate as collateral, but later, unbeknownst to FDIC, reported the certificate as

---

[1] Presumably the vessel was disguised to appear as a merchant vessel, as was the practice in the anti-piracy patrols off of Somalia. See *United States v. Dire*, 680 F.3d 446, 449, fn.1 (4th Cir. 2012).

lost and got replacement certificates. He later sold the shares represented by the stock certificates. He later defaulted on his note to FDIC and the "replacement" of the share was discovered. The indictment alleged that the cancelled certificates had been rendered valueless. The defense argued that "the protections afforded to the FDIC under the Uniform Commercial Code ("UCC") are such that, as a matter of law, it was impossible to "cancel" and render "valueless" the certificates in question vis-a-vis the interests of the FDIC." The district court determined that the allegations were insufficient, accepting, essentially, the argument of the defense.

> The Court does not believe that finding the FDIC to be a bona fide purchaser and holder in due course is an act by this Court which "invade[s] the province of the ultimate finder of fact" because the indictment itself provides the requisite information upon which the Court can make such a preliminary finding.

307 F.Supp.2d 370 at 376. The trial court concluded:

> At any time, the FDIC could have redeemed or cashed in certificate 1315 for value. Therefore, this allegation is deficient as a matter of law because certificate 1315's value was not and could not be lost to the FDIC.

*Id.* at 377.

The Second Circuit reversed, *United States v. Autorino*, 381 F.3d 48 (2d Cir. 2004). But this was not because the district court did not have the power to evaluate whether the factual allegations in the indictment were sufficient. It was because the circuit court panel determined that

> the cancellation of the FDIC's stock certificate by the issuer's transfer

13

agent would render it valueless until the FDIC engaged lawyers and took the necessary steps to invoke the UCC remedy to restore recognition of the cancelled certificate.

*Id.* at 53. Also, the panel noted, the restored stock would be intrinsically less valuable because it represented a smaller share of the outstanding stock. Importantly, the panel decision noted that the allegations in the indictment about the stock being rendered valueless were not really material to the offense, and thus their objective falsity was inconsequential in that case. "Even if the hypothecated certificates were not absolutely 'valueless,' their value as security was nonetheless compromised," the court said. *Id.* at 54. In contrast, in the present case, the allegations at issue are central to the case.

In *United States v. Evans*, 844 F.2d 36 (2d Cir. 1988) the defendants were charged with mail and wire fraud conspiracy and providing false end user certificates to the United States, hoping to deceive the government into thinking that arms were being sold to an acceptable country under the Arms Export Control Act, 22 U.S.C. § 2751, et seq. The defense moved to dismiss for the failure of the indictment to sufficiently allege that the United States was deprived of property.

> Specifically, defendants pointed out that the "property" involved—the weapons—is not alleged to belong to the United States; evidently, some of the weapons were sold directly by their manufacturers to foreign governments, and even those that may have once belonged to the United States are now owned by foreign countries. Moreover, the "money" involved—the commissions—was to be paid by the recipient governments, not by the United States.

*Id.* at 38. The government also attempted to argue that it had a "property interest" in controlling shipment of U.S.–sourced armaments from one country to another, as required under the recently decided *McNally v. United States*, 483 U.S. 350 (1987). Of course a properly instructed jury could have been left with these questions to answer. But the district court granted the motion to dismiss. In so doing, the district court necessarily decided whose "property" the armaments were and whose "money" was paid to the recipient governments, and whether the government's intangible rights in controlling the end use of exported arms was "property."

Interestingly, the district court made it clear that it felt his decision with respect to the "intangible rights" of the government was "close and difficult." He said "that on balance the preferred procedure and the procedure with which the court is comfortable on the merits" where the soundness of the government theory is so questionable "is to find that the interest of the United States is not a property right and to strike the federal fraud counts." *Id.* at 38.

In affirming, the Second Circuit retraced the methodology of the district court, who resolved a potential factual question at trial about who owned the armaments, by looking at the obvious: what is alleged and what is not alleged both in the indictment and pleadings and statements by the parties before him – and even what the government said at oral argument before the appeals court:

> To win, the government must show that it had some property interest in the arms. This it has not done. The closest it comes is when it half-heartedly argues that the indictment implies that the United States owned all of the rights in at least some of the weapons at some point, since certain types of weapons legally may be sold only by the government. However, the government also stated at oral argument that it would not attempt to prove its ownership at trial. Consequently, for present purposes we assume that the government is not asserting any property right arising out of sales of weapons owned and possessed by the United States immediately before the fraud, but only rights arising out of sales of weapons owned by third countries. Thus, unless we accept the alienation theory, the judgment below should be affirmed under the interpretation of the federal fraud statutes previously set out.

844 F.2d at 40. The government was required to "show" that it had a triable case on the question of ownership of the armaments before being allowed to proceed, and that question was capable of being determined without a "trial of the general question" of guilt.

The appeals court went on to also affirm the district court's conclusion that the "alienation" theory, the "intangible right" theory, also did not hold water. All these issues could have been decided by a properly instructed jury. But the government did not even argue that the district court did not have the power under Rule 12 to grant the motion, and the Second Circuit used the same methodology which clearly looked beyond merely whether the indictment tracked the statutory language. The district court wisely avoided a wasteful jury trial on extensive charges where the government had a facially sufficient indictment, in one sense, but an invalid or unsupportable theory.

### 3.     Applying Rule 12(b).

The critical distinction is between asking the court to give a premature verdict on guilt or innocence, and asking the court to determine whether the government, as a matter of law, is incapable of proving an essential part of the offense. Contrary to what the government often pretends, a Rule 56 "summary judgment" disposition, on the sufficiency of the evidence, is not what the defendant here is seeking.

Instead, the question that this Court is being asked to answer is whether the defendant's guilt is even a legal possibility, on the basis of the facts alleged in the indictment and others not in dispute, and this is entirely permissible, and indeed preferable, on a pretrial motion to dismiss. *United States v. Cremer*, 12-cr-473, 2012 WL 6681700 (S.D.N.Y. Dec. 13, 2012) the same Southern District of New York decision that noted that "there is no 'summary judgment' equivalent" in criminal cases, made this distinction well:

> Whether or not the conduct to which a charge refers could, as a matter of law, support the statutory definition for a crime, is appropriately resolved on a motion to dismiss an indictment. See Fed.R.Crim.P. 12; *United States v. Heicklen*, 858 F.Supp.2d. 256, 262 (S.D.N.Y.2012) *(citing United States v. Covington*, 395 U.S. 57, 60–61 (1969)) [. . .].
>     Thus, defendant's motion is appropriate to the extent it challenges whether the conduct for which he is charged—placing child pornography into a shared folder on his computer, accessible to others using a peer-to-peer file-sharing application—can, as a matter of law, constitute "distribution." That question is a legal one. By contrast, whether the Government can prove that the charged conduct has, in fact, occurred is an issue for trial.

2012 WL 6681700, at *2-*3.

Recognizing that this Court has the authority to grant a motion to dismiss, we will turn to the grounds for the Defendants' motion to dismiss.

## II. Counts six, seven, and eight of the indictment are fatally flawed and should be dismissed.

Because the government's indictment on counts six, seven, and eight is deficient, the Court should grant this motion to dismiss those counts. Count six of the indictment requires the government to prove Mr. Pablo Rangel-Rubio and Juan Rangel-Rubio knew or could reasonably foresee an official proceeding at the EEOC, and there is no evidence to suggest that either knew or had reason to foresee an official EEOC proceeding. Similarly, as to count seven, the government must prove that Mr. Pablo Rangel-Rubio and Mr. Juan Rangel-Rubio retaliated against a witness for attending an official proceeding. First, there is no evidence to suggest an official proceeding took place. Second, the government cannot show either had knowledge of an official proceeding. Lastly, the government cannot prove that Mr. Pablo Rangel-Rubio exchange anything of value for Higinio Perez-Bravo to murder Mr. Montoya. In fact, the government alleged that Mr. Perez-Bravo was not the one who murdered Mr. Montoya, but Mr. Juan Rangel-Rubio murdered Mr. Montoya. Because the government, from a purely legal stance, cannot prove each of the

18

elements of counts six, seven, and eight, this Court should grant the Defendants' motion to suppress.

### A.    The Government Cannot Establish all of the Essential Elements of an 18 U.S.C. §1512(a)(1)(A) Offense (Count 6)

An essential element of an 18 U.S.C. §1512 offense is the existence of an "official proceeding" or that an official proceeding be reasonably foreseeable. Neither scenario can be met in this case. It is clear that at the time Mr. Montoya was killed, the EEOC was, at most, in the preliminary stages of an informal investigation which, legally does not qualify as an official proceeding. Furthermore, the indictment does not allege an official proceeding was reasonable foreseeable. Lastly, assuming *arguendo* that Pablo and Juan conspired to kill Eliud Montoya, there is no evidence to establish that they had knowledge of an impending EEOC[2] official proceeding.

Count Six alleges a conspiracy to kill a witness in violation of 18 U.S.C. § 1512(a)(1)(A) & (B). Specifically, the government has alleged Pablo and Juan conspired to kill Eliud Montoya to "prevent him from providing testimony and producing records or documents in an official proceeding conducted by the EEOC." (Doc. 179 at pg. 19 ¶ 82). An official proceeding is defined as

---

[2] The EEOC complaint filed by Montoya was not against Pablo. Rather Montoya alleged that there was discrimination and retaliation perpetrated by The Davey Tree Expert Company (TDTEC).

**(A)**  A proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims or a Federal Grand Jury;

**(B)**  a proceeding before the Congress;

**(C)**  a proceeding before a Federal Government Agency which is authorized by law; or

**(D)**  a proceeding involving the business of insurance whose activities affect interstate commerce . . .

18 U.S.C. § 1515(a)(1).  Here, the indictment alleges the official proceeding will be that of a Federal Government Agency, the EEOC.  (*See* Doc. 179 at pg. 19 ¶ 82).[3]

In order to obtain a conviction on this Count, the government must prove the killing was to prevent attendance at an official proceeding.  Thus, it is of critical importance to determine what constitutes an official proceeding.  An examination of the legal definition of an official proceeding and associated facts have to be proven, makes clear the government cannot meet its burden.

---

[3] The law is long settled in a case like this that in order for an indictment to be legally sufficient, it must contain an explicit reference to the proceeding alleged to have been obstructed.  *See Russell v. United States*, 369 U.S. 749 (1962). *See also*, *United States v. Murphy*, 762 F.2d 1151, 1154-55 (1st Cir. 1985) (conviction reversed because the indictment did not identify the official proceeding the defendants were attempting to influence); *United States v. Peterson*, 544 F.Supp. 2d 1363, 1376-77 (M.D. Ga. 2008) (court dismissed count which failed to indicate which official proceeding defendant was charged with obstructing).

Courts have routinely found that "[t]he term 'official proceeding' . . . implies something more formal than a mere investigation." *United States v. Southerland*, 921 F.3d 421, 426 (4th Cir. 2019). *See also*, *Marinello v. United States*, ___ U.S. ___, 138 S.Ct.1101, 1110 (2018) (IRS investigation is not an official proceeding); *United States v. Ramos*, 537 F. 3d 439, 463 (5th Cir. 2008) (Border Patrol investigation not an official proceeding); *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (FBI investigation not an official proceeding); *United States v. Young*, 916 F.3d 368384 (4th Cir. 2019) (same); *United States v. McDaniel*, 2013 WL 8476819 (N.D. Ga. 2013)(same); *United States v. Binette*, 828 F. Supp.2d 402, 404 (D. Mass. 2011 (SEC investigation not an official proceeding); *United States v. Southerland*, 921 F.3d 421, 425 (4th Cir. 2019) (U.S. Attorney investigation not an official proceeding).  It is beyond dispute that the term official proceeding "contemplates a formal environment in which persons are called to appear or produce documents." *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008). *See also*, *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019).  In order to be an "official proceeding" it must be a proceeding that "suggests an appearance in front of the agency sitting as a tribunal." *United States v. Ermoian*, 752 F.3d 1171.

Title 18 U.S.C. §1512 specifically expands the definition of official proceeding found in 18 U.S.C. §1515 by providing that an official proceeding "need not be pending or about to be instituted at the time of the offense."  18 U.S. §1512

(f)(1).  Thus, under the current state of the law, "the government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant."    *Marinello v. United States*, 138 S.Ct. at 1110.  To be reasonably foreseeable it is not enough that the defendant knew there might someday be an official proceeding sometime in the future, the government must demonstrate "the proceeding must at least be in the offing."    *Id*.  Lastly, it is not enough that the defendant could reasonably foresee some federal proceeding, "the government must prove that Mr. Pablo Rangel-Rubio and Mr. Juan Rangel-Rubio knew, or at least foresaw the [EEOC] proceeding. *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011).  *See also*, *United States v. Aguilar*, 515 U.S. 593, 599 (1995); *United States v. Young*, 916 F.3d at 386; *United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015); *United States v. Tyler*, 732 F.3d 241, 248-49 (3rd Cir. 2013).  Thus, the government must "prove beyond a reasonable doubt that [the defendants] knew that the natural and probable result of [their] actions would be" preventing Montoya's testimony before an EEOC hearing.  *United States v. Friske*, 640 F.3d at 1292-93.  *See also*, *United States v. Baker*, 2016 WL 3541008 at *4 (3rd Cir. 2016) ("the government must prove the defendant had in contemplation a particular proceeding when he or she attempted to interfere with evidence.").

22

Here, there is no doubt that two days after Eliud Montoya met with a representative of the EEOC and filed his complaint, an "official proceeding" ***had not*** materialized. At most there was an informal investigation under way which does not constitute an official proceeding. EEOC procedures make this point crystal clear. After a complaint is filed with the EEOC, the first step is for the agency to notify the organization of an investigation. The agency specifically notes that the EEOC "has authority to investigate whether there is reasonable cause to believe discrimination occurred." Further, [d]uring the investigation, the organization and the Charging Party will be asked to provide information . . . the investigator will evaluate the information submitted and make a recommendation as to whether there is reasonable cause to believe that unlawful discrimination has taken place." *See*, EEOC: What You Can Expect After a Charge is Filed, accessed at https://www.eeoc.gov/employers/process.cfm. Statistics demonstrate further that this preliminary investigation cannot be construed to likely produce a process wherein there is an appearance the agency is sitting as a tribunal, an official proceeding. Almost three quarters (71%) of the complaints filed are dismissed based on a finding of no reasonable cause and 14% are administratively dismissed**.** *See* Exhibit 1. Only 13% of all complaints the EEOC closed last year ended with a

settlement or other relief for the workers who filed them.[4]  Given these statistics, it cannot be said that that an EEOC official proceeding "was at least . . . in the offing." *Marinello v. United States*, 138 S.Ct. at 1110.

There is no evidence Mr. Pablo Rangel-Rubio or Mr. Juan Rangel-Rubio knew Eliud Montoya filed a complaint with the EEOC.  Thus, the facts and circumstances surrounding Mr. Montoya's employment and/or interactions with Pablo must make an EEOC proceeding "reasonably foreseeable."  The facts and circumstances ***do not*** make it reasonably foreseeable Eliud Montoya would even pursue an EEOC complaint.[5]  Mr. Montoya had filed a complaint with the Davey Tree Experts Company (hereinafter "TDTEC") in April of 2017.  In that complaint, the nature of his accusations were things like workers were illegal, some of the

---

[4] *See¸* Jameel, Maryam, More and More Workplace Discrimination Cases are Closed Before They're Even Investigated (June 13, 2019), found at https://publicintegrity.org/inequality-poverty-opportunity/workers-rights/workplace-inequities/injustice-at-work/more-and-more-workplace-discrimination-cases-being-closed-before-theyre-even-investigated/.

[5] Mr. Montoya did not even anticipate filing an EEOC complaint.  In fact he asked a family friend, Carmen Brown, to accompany him to the Department of Labor to act as an interpreter.  Ms. Brown did her own research and on August 16, 2017, convinced Mr. Montoya he should go to the EEOC instead.  They agreed to meet at the EEOC office the following day where Ms. Brown believed she would act as Mr. Montoya's interpreter.  However, when they got to the EEOC office on August 17, 2017, they learned the EEOC had a person who spoke Spanish, so Ms. Brown was not needed.  She left Mr. Montoya at the EEOC office where he lodged his complaint.  There is no evidence Ms. Brown told anyone Mr. Montoya was planning on going to the EEOC and Ms. Brown does not know Pablo.

workers showed up drunk, and there were fights among the workers.  As the legal

representative of TDTEC described Mr. Montoya's April 24, 2017 complaint:

> While he raised safety concerns, issues about employees drinking on
> the job, licensure issues and concerns about the distribution of wages
> to employees, there is not a single mention of employees being
> Hispanic or that there is a hostile work environment being perpetrated
> with respect to an employee's national origin.

*See* Response to EEOC complaint by The Davey Tree Expert Company, Inc.  That

complaint was investigated and not pursued by the company.  While there may be

some evidence Mr. Montoya had made unspecified assertions he would go to the

state Department of Labor, "it is not enough for the government to argue that [Mr.

Pablo Rangel-Rubio and Mr. Juan Rangel-Rubio] could have speculated that some

official proceeding lies somewhere in the offing" *United States v. Southerland*, 921

F.3d at 42.  Rather, the government must prove that Mr. Pablo Rangel-Rubio and

Mr. Juan Rangel-Rubio "knew of or reasonably foresaw" this particular EEOC

proceeding.  *United States v. Friske*, 640 F.3d at 1292.  Nothing would have put Mr.

Pablo Rangel-Rubio and Mr. Juan Rangel-Rubio on notice that there was even the

possibility of Mr. Montoya filing an EEOC complaint. Thus, the indictment is

deficient as the government, as a matter of law, will not be able to prove the element

of knowledge of an official proceeding.

### B.    The Government Cannot Establish all of the Essential Elements of an 18 U.S.C. §1513(a)(1)(A) Offense (Count 7)

In Count seven of the instant indictment, the government has charged Mr. Pablo Rangel-Rubio and Mr. Juan Rangel-Rubio with conspiracy to "kill a witness with the intent to retaliate against the witness for attendance at an official proceeding and for any testimony given or any record, document or other object produced by the witness in an official proceeding in violation of 18 U.S.C. §1513(a)(1)(A), (f)." Once again, "official proceeding" is defined by 18 U.S.C. §1515 and in this case the official proceeding is "a proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. §1515(a)(1)(C). Unlike its counterpart, 18 U.S.C. §1512, §1513, does not modify to expand the definition of official proceeding. In a prosecution under §1513 the government must prove that the witness actually testified or produced evidence at an official proceeding that had actually occurred. Reasonable foreseeability is not an option.

### 1.    The Government Cannot Establish the Official Proceeding Element

Here there is no doubt *an official proceeding* had not commenced. Courts have universally found that investigations conducted by government agencies *do not qualify as official proceedings*. *See United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) (FBI investigation not an official proceeding), *United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008) (Border Patrol investigation not official proceeding),

26

*United States v. Peterson*, 627 F.Supp. 2d 1359 (M.D. Ga. 2008), *United States v. Dunn*, 443 F.Supp. 2d 1203 (M.D. Ala. 2006) (ATF investigation not an official proceeding), *United States v. Young*, 916 F.3d 368 (4th Cir. 2019) (FBI investigation not an official proceeding), *United States v. McDaniel*, ___ F.Supp. 2d. ___, 2013 WL 8476819 (N.D. Ga. 2013), *United States v. Binette*, 828 F.Supp. 2d 402 (D. Mass. 2011)(SEC investigation not official proceeding), *United States v. Southerland*, 921 F.3d 421 (4th Cir. 2019) (U.S. Attorney investigation not an official proceeding), *United States v. Ho*, ___ F.Supp. 2d ___, 2009 WL 2591345 (9th Cir. 2009) (law enforcement investigation that precedes an official proceeding not an official proceeding).  As noted above, the definition of an official proceeding "contemplates a formal environment in which persons are called to appear or produce documents."  *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008). *See also*, *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019).

The only thing that the government can establish is that a preliminary investigation by agents of the agency had commenced.  A prosecution under 18 U.S.C. §1513, unlike one under § 1512, cannot rest upon the principle that an official proceeding only need be reasonably foreseeable.  This is self-evident when examining the two statutes.  18 U.S.C. §1513 does not modify the definition of

official proceeding like its counterpart, §1512 does.[6]  The language in §1512(f)(1), which courts have interpreted to allow reasonable foreseeability is noticeably absent from §1513.  This distinction is critical and dispositive because "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the deliberate inclusion or exclusion."  *Russello v. United* States, 464 U.S. 16, 23 (1983).[7]  Congress's deliberate decision ***not to include*** §1512's expansive definition of official proceeding clearly indicates it did not intend to expand prosecutions to anything other than "a proceeding before a Federal Government agency which is authorized by law."  As the EEOC was, at most, conducting a preliminary investigation there was no "official proceeding" that could support a prosecution under 18 U.S.C. §1513.  Therefore, this Court should grant a motion to dismiss as to count seven.

### 2.    The Government Must, But Cannot Establish Knowledge of a Federal Official Proceeding

Further, a prosecution under 18 U.S.C. §1513 requires the government prove beyond a reasonable doubt the defendant knew the official proceeding would be

---

[6] 18 U.S.C. §1512 specifically provides: that "for purposes of this section an official proceeding need not be pending or about to be instituted at the time of the offense."  *Id*. at (f)(1).

[7] Both 18 U.S.C. §1512 and §1513 became law together as part of the Victim and Witness Protection Act of 1982.  *See* Pub.L 97-291, §4(a), 96 Stat. 1250 (1982).

federal.  This essential element will be difficult if not impossible for the government to establish.

In examining the relevant language of 18 U.S.C. §1513, it becomes clear the intent required must be an intent to disrupt a federal proceeding.  The statute provides:

> **(a)(1)** Whoever kills or attempts to kill another person with intent to retaliate against any person for—
>
>> **(A)** the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding;

18 U.S.C. § 1513(a)(1)(A).  The term "official proceeding" is defined as:

> **(A)**  a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> **(B)**  a proceeding before the Congress;
> **(C)**  a proceeding before a Federal Government agency which is authorized by law; or

18 U.S.C. §1515 (a)(1).  Thus, an "official proceeding" is a federally connected proceeding.[8]  The elements of an offense charged under §1513 are:

> (1) knowing engagement in conduct (2) either causing, or threatening to cause, bodily injury to another person (3) with the intent to retaliate for, *inter alia,* the attendance or testimony of a witness at an official proceeding.

---

[8] The one exception would be an insurance related proceeding affecting interstate commerce.  *See* 18 U.S.C. §1515(a)(1)(D).

*United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010).  *See also*, *United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993) and *United States v. Wardell*, 591 F.3d 1279, 1291 (10th Cir. 2009).  A plain reading indicates that in order to support a conviction under this provision the government must prove the killing was intended to retaliate for attending or providing evidence or testimony before a federal proceeding.  This intent requires the defendant have knowledge of a federal proceeding.

This same finding was made in an analogous situation by the Court in *United States v. Denham*, 663 F.Supp. 2d 561 (E.D. Ky. 2009).  There, the Court was dealing with a prosecution under 18 U.S.C. §1513(b)(2) and did not involve a killing. While addressing different portions of the statute, the pertinent language of both sections is identical.  In both there is conduct (1513(a) – killing; 1513(b) bodily injury or threats) done "with the intent to retaliate against any person" for "the attendance or testimony given or any record, document or other object produced by a witness at an official proceeding."  After examining the language of the statute the Court compared the language in §1512 & §1513, noting they were passed at the same time and they share the "definitional section, §1515 which defines [both an official proceeding and] law enforcement officer."  *United States v. Denham*, 663 F.Supp. 2d at 568.  The Court noted that a key difference in the statute is that §1512 "explicitly excludes anti-federal scienter as part of the required proof."  *Id*. at 569.

In a prosecution under 18 U.S.C. §1512, "no state of mind need be proved with respect to the circumstance":

> **(2)** that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

*See* 18 U.S.C. §1512 (g).[9]  The Court noted that because §1513 contained no such equivalent provision, the "difference[] … warranted attention and ha[d] significance."  *United States v. Denham*, 663 F.Supp. 2d at 569.  The fact that §1512 specifically contained a disclaimer that that no mental state as to the federal nexus be established, while §1513 did not exempt the mental state, led the Court to conclude that in a prosecution under 18 U.S.C. §1513, the government must prove beyond a reasonable doubt the defendant knew the law enforcement officer (or in the instant case, the official proceeding) was federal.  *United States v. Denham*, 663 F.Supp. 2d at 574.

The same analysis that applied in *Denham* is applicable here.  As there is no evidence Mr. Pablo Rangel-Rubio or Mr. Juan Rangel-Rubio knew or had reason to know Mr. Montoya had gone to the EEOC (rather than the state labor department), this Court should grant this motion to dismiss.

---

[9] The language contained in 18 U.S.C. §1512(g)(1) is identical but pertains to an official proceeding instead of a government official.

**III.    There are Legal and Factual Challenges Facing the Government in Proving Count 8**

Count eight charges Mr. Pablo Rangel-Rubio and Mr. Higinio Perez-Bravo with conspiracy to commit murder for hire.  In order to obtain a conviction for this Count, the government must prove:  (1) an agreement to accomplish an illegal purpose; (2) one or more acts in furtherance of the illegal purpose; and (3) the intent necessary to commit the underlying substantive offense.    *United States v. Pemberton*, 853 F.2d 730, 733 (9th Cir. 1988).    Further, the government must establish all as to the substantive offense:  (1) travel or cause another to travel or use a facility of interstate commerce; (2) with the intent a murder be committed; (3) as consideration for the receipt of or promise to pay anything of pecuniary value.  18 U.S.C. §1958.  As to the pecuniary gain aspect, the Seventh Circuit has noted, "[t]he federal murder-for-hire statute requires the government to prove that the accused intended for a murder to be committed as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value." *United States v. Richeson,* 338 F.3d 653, 657 (7th Cir.2003).  The Court went on to note that "consideration retains its contract law meaning of a bargained-for exchange of something of value" and that the statute requires a quid-pro-quo between the solicitor and the murderer." *Id*.  As the Second Circuit has similarly held:

> The federal murder-for-hire statute proscribes a very limited category of behavior; only those instances in which one party agrees to commit a murder in exchange for another party's provision (or future promise)

of payment are punishable under § 1958. *See United States v. Washington*, 318 F.3d 845, 854 (8th Cir.2003) ("The consideration requirement of [§ 1958] has been interpreted in the traditional sense of a bargained-for exchange."); *United States v. Hernandez*, 141 F.3d 1042, 1057 (11th Cir.1998) (noting that the language of § 1958 "undeniably contemplates a quid-pro-quo (or at least the promise of such) between the parties to the transaction, the murderer and the solicitor"). Moreover, the reach of § 1958 is further limited by the requirement that this payment take the form of "anything of pecuniary value," defined as "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage." 18 U.S.C. § 1958(b)(1).

*United States v. Frampton*, 382 F.3d 213, 217–18 (2d Cir. 2004) (emphasis added).

*See also United States v. Chong*, 419 F.3d 1076, 1082 (9th Cir. 2005) ("We agree with our sister circuits that there must be evidence that the hitmen clearly understood they would receive something of pecuniary value in exchange for performing the solicited murderous act.").

The government's own theory as laid out in the indictment demonstrates the legal flaw in this instance. The government alleges Mr. Juan Rangel-Rubio was the actual person who pulled the trigger. The indictment also avers that any payments in relation to the murder-for-hire were from Mr. Pablo Rangel-Rubio to Mr. Perez. There is no allegation in the indictment nor is there a factual basis or anything provided by the government in discovery thus far to show any payment from Mr. Pablo Rangel-Rubio to Mr. Juan Rangel-Rubio for the murder of Mr. Montoya. Thus, there is no "quid-pro-quo, between the solicitor and the murderer" as 18 U.S.C. §1958 requires.

33

## IV.    Conclusion

Wherefore, the defendant requests the Court grant this motion and dismiss counts six, seven, and eight.

Dated: This 21st day of October, 2020.

Respectfully submitted,

_/s/ J. Wesley Bryant_                          _/s/ Mark E. Olive_
J. Wesley Bryant                                Mark E. Olive
State Bar No. 091621                            Law Office of Mark E. Olive
Counsel for Pablo Rangel-Rubio                  Counsel for Juan Rangel-Rubio

_/s/ John R. Martin_
John R. Martin
Martin Brothers, P.C.
Counsel for Higinio Perez-Bravo


Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
Wes_Bryant@fd.org

CERTIFICATE OF SERVICE

I hereby certify that I have this day served all the parties in the above-captioned case in accordance with the directives from the Court Notice of Electronic Filing which was generated as a result of electronic filing.

Dated: This 21st day of October, 2020.

*/s/ J. Wesley Bryant*
J. Wesley Bryant
State Bar No. 091621
Counsel for Pablo Rangel-Rubio

Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
Wes_Bryant@fd.org