IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>PABLO RANGEL-RUBIO; JUAN RANGEL-RUBIO; and HIGINIO PEREZ-BRAVO | CASE NO.: 4:18-cr-274 |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion and Supplemental Motions to Dismiss Indictment and Stay Proceedings, docs. 420, 429, 439. For the reasons stated below, I **RECOMMEND** the Court **DENY** the Motions.

### BACKGROUND

Defendants in this case have been charged with committing various crimes, including conspiracy to harbor illegal aliens, to commit money laundering, and to kill a witness. Doc. 2. Defendants were indicted on December 7, 2018, and counsel was appointed to represent Defendants on December 14, 2018. Docs. 2, 20, 21, 22, 25. On December 20, 2018, the Government filed a motion to designate the case complex, which the Court granted on February 4, 2019. Docs. 31, 62. On February 28, 2019, the Court appointed counsel learned in the law applicable to capital cases for each Defendant. Docs. 91, 92, 93. The Government considered pursuing the death penalty in this case but ultimately decided not to after completing its internal review procedure. Doc. 253. Nonetheless, the case remains designated as complex. Doc. 290.

On March 13, 2020, Defendant Higinio Perez-Bravo filed a request under 28 U.S.C. § 1867(f) asking the Court to disclose certain categories of jury selection records and materials

on behalf of all Defendants. Doc. 274. Defendant Perez-Bravo asserted he needed access to this information to determine whether he had a meritorious challenge under the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861. Id. at 2–4. The Court granted this request in part and permitted access to the Court's Jury Selection Plan, jury selection reports, relevant dates, number of persons summoned, relevant calculations, data relating to master and qualified jury lists, data relating to grand jurors in this case, and the disposition of summoned jurors. Doc. 384. The Clerk of Court assisted Defendant's counsel with obtaining access to the relevant information, docs. 404, 412, and the Court ordered certain additional accomdations to provide full access to the information, doc. 432.

After reviewing these records and materials, Defendant Higinio Perez-Bravo filed a Motion on behalf all Defendants seeking to dismiss the indictment and stay proceedings in the case due to claimed violations of the Constitution and the JSSA, supported by a declaration from his expert, Jeffrey Martin. Doc. 420. Defendants have since filed two supplemental Motions which include two additional declarations from Mr. Martin. Docs. 429, 439. The Court held a hearing on these Motions (collectively referred to here as the "Jury Selection Motions") on June 17, 2021. During the hearing, Defendants' expert, Mr. Martin, and Linda Johnson, Jury Administrator for the Southern District of Georgia, testified.

The Jury Selection Motions deal solely with the grand jury that returned the Indictment in this matter, and do not address any petit jury, as one has not yet been selected. Grand juries in this District are selected on a District-wide basis, but each of the six divisions has its own master and qualified jury wheel. Based on the population size, the Court selects a certain number of jurors from each jury wheel to account for the 80 individuals summoned for the district-wide grand jury. Doc. 480 at 20–21. The Court utilizes the voter registration list as the source list

from which potential jurors are randomly selected and placed on each master jury wheel. Id. at 24–25, 66. Potential jurors on the master wheels are then randomly selected to be sent a qualification form. Id. at 25, 66. Once the qualification form is returned, qualified potential jurors are placed on a smaller qualified jury wheel for each division. Id. at 25–26, 66-–67. The ultimate grand jury is then summoned from the qualified jury wheels.

## DISCUSSION

I.   **Jury Selection Motions**

    A.   **Legal Standard**

In their briefing, Defendants argue African Americans and Latinos were underrepresented during the grand jury selection process. Defendants presumably assert their challenge under both the Constitution and JSSA. Doc. 420. There are three principle legal avenues through which a defendant can challenge the jury selection process.

First, the Sixth Amendment guarantees a jury selected from a fair cross-section of the community. Duren v. Missouri, 439 U.S. 357, 364 (1979). To establish a prima facie violation of the Sixth Amendment cross-section requirement, "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. Regarding the second element, Defendants must show an absolute disparity between the percentage of the relevant group in the jury eligible population and the percentage of the relevant group on the qualified jury wheel of at least 10 percent. United States v. Grisham, 63 F.3d 1074, 1079 (11th Cir. 1995).

Second, a defendant can challenge the jury selection process through the JSSA. The JSSA further solidifies the cross-section requirement of the Sixth Amendment. The JSSA only remedies "substantial failure[s] to comply" with the Act's requirements. 28 U.S.C. § 1867(d); United States v. Carmichael, 560 F.3d 1270, 1277 (11th Cir. 2009). The JSSA sets forth three primary principles, which, if violated, causes a substantial violation. Carmichael, 560 F.3d at 1277. These three principles are "(1) random selection of juror names; (2) from a fair cross-section of the community; and (3) use of objective criteria for determination of disqualifications, excuses, exemptions and exclusions." Id.

Third, a defendant can assert a jury challenge under the Equal Protection Clauses. While a cross-section claim under the Sixth Amendment "focuses on the representativeness of the jury venire, the focus of an equal protection claim is whether members of a discrete group have been intentionally denied the opportunity to serve on a jury." United States v. Davis, 854 F.3d 1276, 1295 (11th Cir. 2017) (quotation omitted). "To establish a prima facie claim for an equal protection violation, a petitioner must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment, (2) that members of this group were substantially underrepresented on the venire, and (3) that the venire was selected under a practice providing an opportunity for discrimination." Id. (quotation omitted).

Regardless of Defendants' legal basis for their claim, the absolute disparity requirement of 10 percent or more applies to all legal challenges involving alleged inadequate representation of a particular group. United States v. Tuttle, 729 F.2d 1325, 1327 n.2 (11th Cir. 1984); see Carmichael, 560 F.3d at 1280 (holding all claims, including equal protection claim, failed due to failure to satisfy the absolute disparity test).

### B.     June 17, 2021 Hearing

#### 1.     *Jeffrey Martin.*

Jeffrey Martin is a statistical expert, with degrees in mathematics and economics and has significant experience analyzing jury arrays in the federal courts.  Doc. 480 at 16–17.  Mr. Martin assisted the State of Georgia with the revision of its jury selection procedures.  Id. at 37–39.  During the hearing, he described his analysis of the grand jury selection process in the Southern District of Georgia.  Mr. Martin submitted multiple declarations to the Court.  Docs. 420-1, 429-1, 439-1.  Martin testified he noticed a mistake by the Court during the grand jury selection process when McDuffie and McIntosh counties were incorrectly included in the wrong division when calculating the pro-rata number of potential grand jurors from each division.  Doc. 480 at 21–22; Doc. 420-1 at 5.  Due to this mistake, of the 80 grand jurors summoned, two more jurors were summoned from the Dublin Division than should have been, and one less was someoned from the Augusta and Brunswick Divisions, respectively.  Doc. 480 at 22.  Martin opined that this mistake reduced the representation of African American and Latino persons on the grand jury by approximately .03 percent.  Id. at 22–23; Defs.' Ex. 1.

Martin acknowledged in his testimony and reports that the absolute disparity between the jury-eligible population and potential jurors included on the qualified jury wheel was less than 10 percent whether calculated on a division-specific or district-wide basis.  Doc. 480 at 49.  Martin testified the absolute disparity test, while often used by statisticians, suffers from problems, in his opinion.  Martin stated the test is very harsh on small groups because it would permit the Court to completely exclude those groups which comprise less than 10 percent of the population.  Id. at 30.  According to Martin, comparative disparity would better take into account the size of a group.  Id.  Applying comparative disparity, Martin testified African Americans were

underrepresented by 26 percent, while Latinos were underrepresented by approximately 32.16 percent in the group of 80 grand jurors summoned. Id. at 36. Martin further utilized standard deviations to determine whether certain disparities were a result of randomness. Id. at 27–29. All of the standard deviations calculated by Martin were more than three, which is considered statistically significant. Id.; Defs.' Ex. 1.

Martin pointed to a couple of procedures he believes have caused underrepresentation of African Americans and Latinos in the Southern District of Georgia. First, Martin stated supplementation of the source list, for example with a driver's license list or personal identification list, rather than simply using a voter registration list would better represent these groups. Doc. 480 at 39–40. Second, Martin stated only updating the source list every four years leads to underrepresentation because African Americans and Latinos tend to move more. Id. at 40–41. Martin explained the potential jurors who have moved would be less likely to return the qualification forms. Id. at 42. Thus, he suggested the Court should update the source list more frequently and send out qualification forms at the same time the jurors are summoned. Id. at 40–42.

### 2. *Linda Johnson.*

At the hearing, the Government called Jury Administrator Linda Johnson as a witness. Ms. Johnson has served as Jury Administrator for approximately 13 years. Id. at 66. In this position, she is responsible for building the jury wheels and summoning potential jurors. Id. She stated she was not aware of the incorrect placement of McDuffie and McIntosh counties in the Dublin Division when calculating the number of potential grand jurors to summon until the issue was raised in the instant Motions. Id. at 69. Johnson testified she does not have discretion in her position to choose or exclude persons from the jury wheels. Id. at 67. She stated jury

disqualifications are based on objective criteria, like whether the person is a citizen, is 18 or older, has resided in the district for a year, speaks English, and is not a felon. Id. at 67–68. Additionally, she stated the periodic AO-12 form compares the population of certain groups on the qualified jury wheel to the census data, which is sent to the Chief Judge to determine whether the source list needs to be supplemented. Id. at 68. She testified she has not been instructed to supplement the source list. Id.

### C. Analysis

Regardless of the legal basis for their challenge, Defendants have not met the 10 percent absolute disparity test. Defendants' expert acknowledged in his testimony and documents submitted to the Court the absolute disparity between African Americans and Latinos in the jury-eligible population and those included on the qualified jury wheel did not exceed 10 percent. Instead, Defendants argue the Court should adopt an alternative test, such as comparative disparity, because the absolute disparity test suffers from flaws.

The Court declines to rewrite the relevant legal standard set forth by the Eleventh Circuit. The Eleventh Circuit has stated jury challenges asserting particular groups have been underrepresented during the jury selection process must satisfy the 10 percent absolute disparity requirement. See, e.g., Carmichael, 560 F.3d at 1280. This requirement applies regardless of whether the challenge is brought under the Sixth Amendment, JSSA, or Equal Protection Clauses. Id.; Tuttle, 729 F.2d at 1327 n.2. Defendants, by their own account, have not satisfied this requirement. The absolute disparity should be calculated on a district-wide basis. United States v. Dees, 603 F. App'x 777, 780 (11th Cir. 2015) (citing Grisham, 63 F.3d at 1079–80). Mr. Martin calculated a District-wide absolute disparity of 5.10% for African Americans and 1.33% for Latinos using the pro-rated qualified jury wheel for the district. Doc. 420-1 at 7;

Defs.' Exhibit 1.  Even considering each division separately, none of the absolute disparities exceed 10 percent.  Doc. 420-1 at 7; Defs.' Exhibit 1.  Thus, Defendants cannot show a violation regardless of the legal basis for their claim, and their Motions are due to be denied.

The Court recognizes a mistake was made by including too many jurors from the Dublin Division on the pro-rated qualified jury wheel.  However, this mistake had a negligible and immaterial impact on the number of African Americans and Latinos summoned, even by Mr. Martin's account.  Doc. 480 at 22.  Additionally, there is no evidence this error was made intentionally to decrease juror representation from certain groups, and Defendants have not argued it was.  Thus, Defendants have not made a prima facie case for an equal protection violation because they have not shown a discrete group was "intentionally denied the opportunity to serve on a jury."  Grisham, 63 F.3d at 1081.  Although Defendants have pointed to certain practices which they claim indirectly cause some underrepresentation, or that could mitigate underrepresentation, they have not shown the practices that were used were implemented for the purpose of preventing certain groups from participating in jury service.  Moreover, Ms. Johnson testified her position does not permit her to choose or exclude specific individuals from jury wheels.  Doc. 480 at 67.  Therefore, Defendants have failed to carry their burden of demonstrating African Americans or Latinos were impermissibly underrepresented during the grand jury selection process in this cae, regardless of whether the challenge is asserted under the Equal Protection Clause, the Sixth Amendment, or the JSSA.

Accordingly, I **RECOMMEND** the Court **DENY** Defendants' Motion and Supplemental Motions to Dismiss Indictment and Stay Proceedings.

**CONCLUSION**

For the reasons stated above, I **RECOMMEND** the Court **DENY** Defendants' Motion and Supplemental Motions to Dismiss Indictment and Stay Proceedings, docs. 420, 429, 439.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 22nd day of October, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA